**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  1:25CR341 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| | : | |
| vs. | : | |
| | : | |
| RICARDO JOHNSON, | : | **DEFENDANT RICARDO JOHNSON'S** |
| | : | **MOTION TO DISMISS** |
| Defendant. | : | |

Ricardo Johnson moves to dismiss the indictment charging him with being a felon in possession of a firearm, violating 18 U.S.C. § 922(g)(1). (R. 10: Indictment). This statute is unconstitutional, both facially and as applied to Mr. Johnson.[1] Thus, he asks this Court to dismiss the single-count indictment against him.

## I.     Background

Mr. Johnson was arrested after law enforcement executed a federal search warrant for his home and his person. R.1-1: Complaint Affidavit, PageID #: 5. During the execution of that search warrant, Mr. Johnson emerged from a room where a gun was later found. *Id.* During the search, Mr. Johnson cooperated with law enforcement. *Id.* at PageID #: 5–6. Based on the results of this search warrant, Mr. Johnson was charged with being a felon in possession of a firearm. R. 10: Indictment.

Mr. Johnson's previous felony convictions do not show that he was dangerous at the time of the offense. Mr. Johnson has prior convictions for aggravated robbery and burglary, which date

---

[1] Mr. Johnson acknowledges that the Sixth Circuit has rejected facial challenges to 18 U.S.C. § 922(g)(1). He argues for preservation purposes that the statute facially violates the Second Amendment because there is no historic analogue with a similar permanent prohibition for all felons.

back to fifteen years ago. *See* Case No. CR-10-535566-A (Cuyahoga County Common Pleas) (conviction for aggravated robbery); Case No. CR-10-535915-A (Cuyahoga County Common Pleas) (conviction for burglary).

In the last ten years, Mr. Johnson has not been convicted of particularly violent crime. He has been convicted of weapons under disability, escape, and drug related crimes. *See* Case No. CR-15-597149-A (Cuyahoga County Common Pleas) (conviction for weapons under disability); Case No. CR-16-604096-A (Cuyahoga County Common Pleas) (escape conviction); Case Nos. CR-22-672133-B (Cuyahoga County Common Pleas), CR-19638328 (Cuyahoga County Common Pleas) (drug related convictions). Mr. Johnson has two domestic violence convictions, but these are not dispositive in determining Mr. Johnson's dangerousness. *See* Case No. CR-19-638568-A (Cuyahoga County Common Pleas); Case No. 21-662702-A (Cuyahoga County Common Pleas). Mr. Johnson's 2009 misdemeanor conviction has no bearing on his dangerousness.

## II.     Law and Analysis

The Sixth Circuit in *United States v. Williams* provided a framework for district courts to apply when determining the constitutionality of section 922(g)(1) as applied to defendants. 113 F.4th 637 (6th Cir. 2024). This framework applied the Supreme Court's findings in *New York State Rifle & Pistol Ass'n v. Bruen* and determined that section 922(g)(1) may be unconstitutional when applied to a defendant who establishes that they are not dangerous. Here, Mr. Johnson is able to establish that he is not dangerous.

### A.  The *Williams* Court allows defendants who are not dangerous to possess weapons.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court reaffirmed the Second Amendment's right to bear arms is not a second-class right. 597 U.S. at 70. The Court rejected a judicial means-end scrutiny test that required "judicial deference to legislative interest

2

balancing." *Id.* at 26. Instead, the *Bruen* Court instructed courts to inquire: (1) whether the Second Amendment's plain text—including whether the movant is part of "the people" whom the Second Amendment protects—covers the conduct, and (2) whether the government can uphold its burden of showing the law is consistent with historical firearm regulations. *Id.* at 4; 17.

Using the *Bruen* framework, the Sixth Circuit detailed the history and tradition of firearms regulations in the United States in *United States v. Williams*. 113 F.4th 637, 646–58 (6th Cir. 2024). The *Williams* Court concluded that the Second Amendment covers a felon's right to possess a firearm, but also that historically, the government restricted firearm ownership only for specific groups deemed to be dangerous. *Id*. Because of this history and tradition, the Sixth Circuit upheld the facial constitutionality of § 922(g)(1), finding that Congress could disarm categories of people (felons) it believed were dangerous. *Williams*, 113 F.4th at 657. The Court held that an individual who fell within that category of prohibited persons must be given an opportunity to demonstrate they are not dangerous. If a court determines an individual is not dangerous, then the prohibition on possessing a firearm would be unconstitutional as applied to them. *Id.* at 657-63. *Williams* shifted the burden to the defendant to show that he is not dangerous and instructed courts to consider the individual's entire criminal record. *Id.* at 662.

Like *Williams*, many courts have found § 922(g)(1) is unconstitutional as applied. *See United States v. Hostettler*, 729 F.Supp.3d 756, 765 (N.D. Ohio, April 19, 2024), *appeal filed*, (unconstitutional as applied to defendant with nonviolent felony convictions); *United States v. Prince*, No. 1:22-CR-00240, 2023 WL 7220127 (N.D. Ill., Nov. 2, 2023) (finding that § 922(g)(1) is unconstitutional facially and as-applied to felons covered under Second Amendment's plain text and government could not establish historical tradition of firearm regulation); *United States v. Delaney*, No. 22 CR 463, 2023 WL 7325932 (N.D. Ill. Nov. 7, 2023) (same); *United States v.*

3

*Salme-Negrete*, No. 22 CR 637, 2023 WL 7325888 (N.D. Ill. Nov. 7, 2023) (same); *United States v. Griffin*, No. 21-CR-00693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023), *appeal filed*, (holding unconstitutional as applied); *United States v. Ragans*, No. 24-CR-40014-SMY, 2025 WL 88963 (S.D. Ill. Jan. 24, 2025). This Court should find the statute unconstitutional as applied to Mr. Johnson.

> **B. The Second Amendment's plain text covers the conduct prohibited by § 922(g)(1).**

Section 922(g)(1) permanently disqualifies all felons from exercising the fundamental right to possess firearms for any purpose, including self-defense. Under the plain text of the Second Amendment, this statute is presumptively unconstitutional. *See Bruen*, 597 U.S. at 23–24.

> **1. Firearm possession is covered by the Second Amendment's plain text.**

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The plain text, "keep and bear arms," means possessing and carrying weapons. *District of Columbia v. Heller*, 554 U.S. 570, 583-592 (2008). The *Bruen* Court clarified that the core right to possess and carry a firearm for self-defense, identified in *Heller* and *McDonald v. Chicago*, extends outside the home. *Heller*, 597 U.S. at 10 (citing *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)). Section 922(g)(1) is a complete ban on all firearm possessions, with no limitations on type, use, or purpose. It therefore impacts the core Second Amendment right to possess a firearm for self-defense. *See McDonald*, 561 U.S. at 767.

The sole question at this stage of the *Bruen* analysis is whether the "conduct" is covered by the plain text of the Second Amendment. *Bruen*, 597 U.S. at 17. Because the Second Amendment covers firearm possession, it is presumptively protected.

> **2. The Second Amendment does not distinguish between people with or without criminal records.**

4

The Second Amendment covers all citizens by conferring the right "to keep and bear arms" on "the people." U.S. Const. amend. II. The plain text does not limit who is included in "the people." *Id.* The text simply says: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *Id.*

The *Williams* Court reaffirmed that the Second Amendment does not distinguish between felons and non-felons. *Williams*, 113 F.4th at 649. The Court declined to find that felon-in-possession statutes are presumptively constitutional, as other circuits have, and thus that felons are automatically excluded from the Second Amendment's text. *Id.* at 645-648. The *Williams* Court rejected other circuits' reliance on the "law-abiding, responsible" language in *Heller*, noting that *Heller* itself did not limit the scope of the "people" who have the right to keep and bear arms. *Id.* (citing *Heller*, 554 U.S. at 581). The *Williams* Court also observed that the Supreme Court's recent opinion *United States v. Rahimi* made clear that the government cannot disarm citizens who are deemed merely "irresponsible." *Id.* (citing *Rahimi*, 602 U.S. 680, 701 (2024)). Importantly, adhering to the Supreme Court's contention that the constitutional right to bear arms is not a "second-class right," the government cannot deprive a felon of the right to freedom of speech or a jury trial, even if it can restrict a felon's right to vote. *Williams*, 113 F.4th at 647. Likewise, a felon's right to possess a firearm is presumptively protected. *Id.* at 649-650.

Whether a category of people can be disarmed is a question of historical tradition and falls under the second *Bruen* step, not the Second Amendment's plain text.

C.    **The history and tradition of the United States does not support permanently disarming all people with felony convictions.**

The *Williams* Court recounted in detail the historical tradition of limiting gun ownership rights of people deemed to be dangerous. *Williams*, 113 F.4th at 650-657. It reviewed the history and tradition of the United States, beginning with its antecedents in medieval England, supported

using class-based legislation to disarm dangerous people, as long as they had the opportunity to prove they were not dangerous. *Id*. at 661. Dating back to 1328, the English Parliament disarmed those who "will naturally cause a terror to the people." *Id*. at 650. Later, during battles between Catholics and Protestants, Parliament only allowed the latter to carry arms because Catholics were deemed troublesome. *Id*. Transitioning from England to the New World, colonies passed laws removing firearms from "seditious libelers," "Papists," and British loyalists. *Id*. at 651-654. But each of these statutes allowed the alleged transgressors to retain their firearms by proving they were not a danger to society. *Id*. at 651-655.

Ample evidence from the time of the founding suggests that the Constitution's drafters believed that citizens should never be disarmed unless they were in "actual rebellion" or posed a "real danger." *Id*. at 654-656. After the United States's formation, there is little evidence of attempts to disarm felons until the Prohibition Era. *Id*. at 658-659. Even then, the Uniform Firearms Act applied only to individuals convicted of "crimes of violence." *Id*. The Uniform Firearms Act paved the way for the 1938 Federal Firearms Act—the predecessor to § 922(g)(1)—which also only applied to felons convicted of a crime of violence. *Id*. at 659. "Crimes of violence" included murder, rape, assault, and burglary, among others. *Id*. The statute's language was updated to include all felons in 1961, and that version is still in effect today. *Id*. Thus, the notion that all felons should be permanently prohibited from possessing weapons is a recent idea, as compared with the history of American and English laws that influenced the country's founders. The statute therefore violates the Second Amendment.

**D.      Section 922(g)(1) is unconstitutional as applied to Mr. Johnson because he is not dangerous.**

The Supreme Court has found "[a]s-applied challenges are the basic building blocks of constitutional adjudication[.]" *Gonzalez v. Carhart*, 550 U.S. 124, 168 (2007). "Unlike a facial

6

challenge, an as-applied challenge does not contend that a law is unconstitutional as written, but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Binderup v. Att'y Gen.*, 836 F.3d 336, 345 (3d Cir. 2016) (citation omitted). Typically, in a *Bruen* challenge, the government has the burden to provide an historical analogue to the current gun regulation to uphold the regulation's constitutionality. *Williams*, 113 F.4th at 644. But the *Williams* Court upheld 922(g)(1)'s constitutionality as applied to dangerous people. *Id*. at 662-663. The *Williams* holding places the burden on the defendant to bring the as-applied challenge, proving that the constitutionally permissible statute—§ 922(g)(1)—does not apply to him because he is not dangerous. *Id*.

Not all circuit courts have adopted this burden shifting in their as-applied analyses. For example, in *Range v. Atty. General*, 124 F.4th 218 (3d Cir. 2024), the Third Circuit found that "the Government ha[d] not shown that the principles underlying the Nation's historical tradition of firearms regulation support[ed] depriving [the defendant] of his Second Amendment right to possess a firearm." *Id.* at 232 (citing *United States v. Rahimi*, 602 U.S. 680, 692 (2024)). It therefore found permanent disarmament was unconstitutional as to Defendant Range, who had a previous conviction for making a false statement to obtain food stamps. The Court should consider that other circuits have maintained it is the government's burden to prove the defendant is dangerous when deciding an as-applied challenge.

> **1.** **_Williams_ instructs the "dangerousness" inquiry is limited by the types of crimes that makeup a defendant's criminal history.**

Based on the United States's historical tradition of restricting firearm possession for dangerous felons rather than all felons, the *Williams* Court used a "dangerousness inquiry" to resolve Mr. Williams's as-applied constitutional challenge to § 922(g)(1). *Id*. at 662-663. *Williams* divided crimes into three separate categories, although it declined to draw bright categorial lines

as to which crimes show a defendant is "dangerous." *Id*. at 657-660. Notably, *Williams* instructed district courts to make their own "informed judgment," indicating that the trial court is best equipped to assess a defendant's dangerousness on a fact-specific basis. *Id*. at 660-661.

The first category of crimes—crimes against the person—speak most directly to whether an individual is dangerous and include murder, rape, assault, and robbery. *Id*. at 658. The second category, while possibly posing a threat of danger, is more open to interpretation. *Id*. at 659. This category includes drug trafficking and burglary. *Id*. The final category of crimes, which includes mail fraud and making false statements, are very unlikely to indicate a person is dangerous. *Id*. Mr. Williams, convicted under § 922(g)(1), had at least one prior felony of aggravated robbery. *Id*. at 642. Because his criminal history contained a dangerous "crime against the body of another human being," the Sixth Circuit held that Mr. Williams had been constitutionally disarmed under § 922(g)(1) and denied his motion to dismiss the indictment. *Id*. at 662-663. The *Williams* Court determined that a defendant's entire criminal history may be considered, not only the predicate offenses underlying the § 922(g)(1) count. *Id*.

Judge Calabrese seemingly anticipated the *Williams* decision in an April 2024 ruling. *United States v. Hostettler*, 729 F.Supp.3d 756 (N.D. Ohio 2024), *appeal filed*. In *Hostettler*, as the Sixth Circuit would later rule in *Williams*, this Court found Hostettler was not dangerous and therefore § 922(g)(1) was unconstitutional as applied to him. *Id*. at 765. Mr. Hostettler's criminal felony record included drug possession, forgery, receiving stolen property, carrying a concealed weapon, and possessing a firearm after a felony conviction. *Id*. at 759. *Hostettler* held that nothing in the record indicated that the defendant behaved violently or in a dangerous way in the commission of his past felonies. *Id*. at 763-765. The Court ruled that the government could not

8

enforce § 922(g)(1) consistent with the Second Amendment, as applied to Mr. Hostettler. *Id*. at 765.

> **2.      Because Mr. Johnson's criminal record demonstrates that he is not dangerous, section 922(g)(1) is unconstitutional as applied to him.**

This Court has discretion to determine Mr. Johnson's dangerousness based on his criminal record. *Williams*, 113 F.4th at 660–63. When the Court reviews his criminal history under the three categories set out in Williams, it should find that Mr. Johnson is not dangerous.

Mr. Johnson has only one conviction within the category of crimes against a person, his 2010 conviction for aggravated robbery. The *Williams* court left unanswered "whether the crimes in this bucket are dispositive." *Williams*, 113 F.4th at 568. In this case, it is not. This conviction is not indicative of Mr. Johnson's dangerousness in June 2025 because this offense took place 15 years prior. As other courts have found, there is a "common sense inference that older convictions are less probative of dangerousness than new ones." *United States v. Golden*, No. 3:23-cr-94, 2025 WL 268364, at \*6 (N.D. Ohio Jan. 22, 2025) (giving less weight to 20- and 27-year-old convictions); *see also United States v. Banks*, No. 3:20-cr-354, 2025 WL 2243968, at \*10 (N.D. Ohio Aug. 6, 2025) ("Courts in this circuit have found that the age of an offense can affect it probative value in the dangerousness analysis."); *United States v. Norris*, No. 3:23-cr-572, 2024 WL 4816246, at \*7 (N.D. Ohio Nov. 18, 2024) (finding 10 year old conviction to be less probative of dangerousness).  Because Mr. Johnson's only "category one" crime occurred fifteen years ago, it is not probative of his dangerousness at the time of this offense.

Mr. Johnson's more recent convictions also do not demonstrate his dangerousness. Mr. Johnson's convictions within the last ten years would fall largely within the second or third categories. These include his convictions for possessing a weapon under disability, escape, domestic violence, drug trafficking, and drug possession. His convictions for possessing a weapon

9

under disability and drug possession, without additional facts, fall within category three and hold little weight in determining Mr. Johnson's dangerousness. His drug convictions, escape, and domestic violence fall within the second category. And thus, these convictions do not demonstrate his dangerousness.

Mr. Johnson acknowledges that the Sixth Circuit in *United States v. Gailes* applied a "class-wide presumption" of dangerousness to individuals convicted of domestic violence misdemeanors. 118 F.4th 822 (6th Cir. 2024). This decision, however, addressed a facial challenge to section 922(g)(9), not an as-applied challenge. Furthermore, Mr. Johnson received a sentence of 4 months for one domestic violence charge, CR-19-638568, while he received a sentence of 2 years of community on the other, CR-21-662702. Thus, Mr. Johnson's domestic violence convictions do not demonstrate his dangerousness.

## III.    Conclusion

Mr. Johnson was not dangerous at the time of the offense in this case. His criminal record demonstrates that his most dangerous convictions are dated, making them less probative of his dangerousness. His more recent convictions fall within categories of less dangerous behavior. Thus, because Mr. Johnson was not dangerous, section 922(g)(1) is unconstitutional as applied to him, and this Court should dismiss the single count indictment against him.

<div style="margin-left: 40%;">

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar:  0051928

*/s/Ashlynn Rotta*
ASHLYNN ROTTA
Assistant Federal Public Defender
Ohio Bar:  0100465
1660 West Second Street, Suite 750
Cleveland, Ohio 44113

</div>

10

(216) 522-4856 Fax: (216) 522-4321
e-mail: ashlynn_rotta@fd.org